IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARKDUTCHCO 1 B.V. and MARKMIDCO S.ÀR.L, | |
| Plaintiffs and Counterclaim Defendants, | |
| v. | Civil Action No. 17-1420-CFC |
| ZETA INTERACTIVE CORP., | |
| Defendant and Counterclaim Plaintiff. | |

William M. Lafferty, John P. DiTomo, Zi-Xiang Shen, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Stephen M. Juris, Alexandra Verdi, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP, New York, New York

*Counsel for Plaintiffs and Counterclaim Defendants*

Patricia A. Winston, MORRIS JAMES LLP, Wilmington, Delaware; John Du Wors, Nathan Durrance, NEWMAN DU WORS DURRANCE LLP, Seattle, Washington

*Counsel for Defendant and Counterclaim Plaintiff*

**MEMORANDUM OPINION**

November 12, 2019
Wilmington, Delaware

This case was removed to this Court from the Delaware Court of Chancery by Defendant/Counterclaim-Plaintiff Zeta Interactive Corp. (Zeta). Before me are two motions filed by Plaintiffs/Counterclaim-Defendants MarkDutchCo 1 B.V. (MarkDutchCo), a Dutch company, and Markmidco S.àr.l (Markmidco), a Luxembourg company: a motion to confirm an arbitration award and for attorneys' fees, costs, and interest, D.I. 7; and a motion to dismiss, or alternatively, to sever counterclaims, D.I. 10.

## I.   BACKGROUND

### A.   The Interest Purchase Agreement

The parties' disputes arise out of an Interest Purchase Agreement Markmidco and Zeta entered into as of August 28, 2015. D.I. 9, Ex. 5. Pursuant to that agreement, Zeta acquired Markmidco's interest in a customer relationship management business (the CRM business), which consisted of several companies that provided to retailers email and text-message marketing, database management, and related services. Markmidco subsequently assigned certain of its interests under the purchase agreement to MarkDutchCo.

Under the terms of the agreement, Zeta was to pay Markmidco $23,000,000 in cash, 1,685,717 shares of Zeta common stock, and several "Earn-out" payments.

D.I. 9, Ex. 5 § 2(a). Zeta owed Markmidco the "First Earn-out Payment Amount"—$4,000,000—"within five (5) Business Days of the date that EBITDA for the First Earn-out Period [was] finally determined, solely in the event that the First Earn-out Target [was] achieved[.]" D.I. 9, Ex. 5 § 2(b).

EBITDA is an acronym for earnings before interest, tax, depreciation and amortization. The purchase agreement provided a specific formula to be used to calculate the CRM Business's EBITDA to determine the Earn-out payments. The agreement also defined the First Earn-out Period as "the twelve-month period commencing on the first day of the month following the Closing Date and ending twelve-months thereafter." D.I. 9, Ex. 5 App'x A. And it defined the First Earn-out Target as "the achievement by the CRM Business of at least $10,000,000 in EBITDA during the First Earn-out Period." D.I. 9, Ex. 5 App'x A.

The purchase agreement required Zeta to deliver to Markmidco within 30 days of the end of the First Earn-out Period an "Earn-out Statement" detailing Zeta's determination of EBITDA for that period and its calculation of the resulting First Earn-out Payment Amount. D.I. 9, Ex. 5 § 2(b). The purchase agreement also required Zeta to give Markmidco "the opportunity to review all [the] materials and information" Zeta used to prepare the Earn-out Statement and calculate the First Earn-out Payment. D.I. 9, Ex. 5 § 2(b).

If Markmidco did not provide Zeta with a written "Objection Notice" within ten business days of receiving the Earn-out Statement, the Earn-out Statement would become "final and binding." D.I. 9, Ex. 5 § 2(c)(i). On the other hand, if Markmidco wished to dispute the Earn-out Statement, section 2(c) of the purchase agreement required Markmidco to "set forth in reasonable detail [its] alternative calculations (if any), together with reasonable supporting details with respect to the calculation and components thereof[]" in its Objection Notice. D.I. 9, Ex. 5 § 2(c)(i).

On December 29, 2016, Zeta submitted to Markmidco the First Earn-out Statement. D.I. 9, Ex. 1 at 2. Zeta represented in the statement that it had determined the EBITDA for the First Earn-out Period to be less than $10,000,000. D.I. 9, Ex. 1 Attachment A. Therefore, Zeta said, it was not required to pay Markmidco the $4,000,000 Earn-out Payment Amount. D.I. 9, Ex. 1 Attachment A.

On January 10, 2017, Markmidco sent Zeta a letter requesting additional information related to Zeta's First Earn-out Statement. D.I. 9, Ex. 7. The next day, Zeta provided Markmidco with some of the requested additional information, D.I. 9, Ex. 8. In an Objection Notice sent two days later, Markmidco "dispute[d] the First Earn-out Statement in all respects." D.I. 9, Ex. 9. Markmidco, however, did not include an alternative EBITDA calculation in its Objection Notice because

it claimed it still lacked enough information to fully respond to the First Earn-out Statement. D.I. 9, Ex. 9.

Zeta responded to Markmidco's Objection Notice by claiming that the notice was invalid because it did not provide an alternative EBITDA calculation and that in the absence of a valid Objection Notice, the Earn-Out statement was "final and binding for all purposes." D.I. 9, Ex. 10.

On January 30, 2017, after receiving more information from Zeta, Markmidco's counsel sent Zeta a "Supplement" to its Objection Notice. D.I. 9, Ex. 12. In its supplement, Markmidco disputed Zeta's First Earn-out Statement and provided an EBITDA calculation for the First Earn-out Period that was significantly greater than the $10,000,000 threshold that triggered the $4,000,000 First Earn-out Payment. D.I. 9, Ex. 12. On the same day, Markmidco notified Zeta that it was referring the parties' dispute about the Earn-out payment to an accounting arbitrator. D.I. 9, Ex. 13.

**B.     The Arbitration Award**

Under the terms of the purchase agreement, any dispute about the amount of the Earn-out payment—defined by the agreement as "Disputed Payment Amount"—"shall be resolved" by an Accounting Arbitrator—defined by the purchase agreement as "the sole arbiter of all matters, procedural and/or substantive, as to such Disputed Payment Amount." D.I. 9, Ex. 5 § 2(c)(i)(B).

Under the agreement, "absent fraud, bad faith or manifest error[]" the Arbitrator's

decision "constitute[s] an arbitral award that is final, binding and non-appealable

and upon which a judgment may be entered by a court having jurisdiction

thereover." D.I. 9, Ex. 5 § 2(c)(i)(C). In this case, the parties jointly retained

Deloitte & Touche Partner Ken Avery to serve as the Accounting Arbitrator.[1]

On April 28, 2017, Markmidco and Zeta provided the Arbitrator with their

initial submissions. D.I. 9, Exs. 17, 18. On May 19, 2017, the parties submitted

their rebuttal submissions to the Arbitrator. D.I. 9, Exs. 22, 23. The Arbitrator

then issued a series of targeted questions to the parties. D.I. 9, Ex. 24. The parties

responded to the Arbitrator's questions on July 6, 2017. D.I. 9, Exs. 25, 26.

On August 4, 2017, the Arbitrator issued his final and binding determination

(the Award). D.I. 9, Ex. 1. The Arbitrator began by addressing the procedural

matters associated with the Disputed Payment Amount. D.I. 9, Ex. 1. First, the

Arbitrator found that because Markmidco stated in the Objection Notice that it

"disputed the entirety of [Zeta]'s First Earn-out Statement pending receipt of

additional information from [Zeta][,]" Markmidco's failure to provide alternative

---

[1] Consistent with the purchase agreement, the April 20, 2017 Deloitte engagement letter stated that the Arbitrator would "be the sole arbiter of all matters, procedural and/or substantive, as to [the parties'] Disputed Payment Amount[]" under the purchase agreement and that "[t]he Accounting Arbitrator's decision shall be final and binding upon each party hereto, absent fraud, bad faith or manifest error[.]" D.I. 9, Ex. 16 at 1.

EBITDA calculations did not render the Notice deficient.  D.I. 9, Ex. 1 at 3.  The Arbitrator further found that Markmidco's Supplement was procedurally appropriate because the Supplement disputed seven items in Zeta's First Earn-out Statement and contained alternative calculations for six of those items.  D.I. 9, Ex. 1 at 3.

After ruling on these procedural issues, the Arbitrator determined that the EBITDA for the First Earn-out Period was greater than $10,000,000 and, therefore, Zeta owed Markmidco the $4,000,000 First Earn-out Payment.  D.I. 9, Ex. 1 Attachment A.

## C.    Arbitration Fees

The purchase agreement provided that the Arbitrator's fees and expenses would be borne by Zeta and Markmidco "in the proportion that the aggregate dollar amount of the disputed items submitted to the Accounting Arbitrator by such Party that are unsuccessfully disputed by such party (as finally determined by the Accounting Arbitrator) bears to the aggregate dollar amount of disputed items submitted by [the parties]."  D.I. 9, Ex. 5 § 2(c)(i)(D).

The parties initially split payment of the Arbitrator's $96,000 fee equally— $48,000 each.  D.I. 9, Ex. 21, Ex. 27.  But when Zeta refused to pay Markmidco the Award, Markmidco asked the Arbitrator to allocate the $96,000 in arbitration fees between the parties "based on the specific amounts that were 'finally

determined' by Deloitte." D.I. 9, Ex. 28 at 2. According to Markmidco, the Arbitrator's decision "finally determined in favor of [Markmidco] with respect to 85% of the disputed items determined in connection with that award . . . and in favor of [Zeta] with respect to 15% of those items[.]" D.I. 9, Ex. 28 at 2. Markmidco argued that Zeta was therefore "responsible for payment of 85% ($81,600) of Deloitte's $96,000 fee[]" and Markmidco was "responsible for 15% of the fee ($14,400)." D.I. 9, Ex. 28 at 2. Because each party had advanced $48,000 of Deloitte's fee, Markmidco asked the Arbitrator to award it $33,600 (i.e., $48,000 – $14,400). D.I. 9, Ex. 28 at 2.

The Arbitrator declined Markmidco's request to determine how the parties should allocate his fee, on the grounds that the purchase agreement and engagement letter "did not include the involvement of the arbitrator in determining the proper allocation of the fees to be borne by each of the parties." D.I. 9, Ex. 28 at 1.

### D.    The Parties' Pleadings

On September 6, 2017, Plaintiffs filed a verified complaint in the Delaware Court of Chancery against Zeta. D.I. 9, Ex. 2. Zeta filed an answer and seven counterclaims in the Court of Chancery on October 10, 2017. That same day, Zeta removed the case to this Court.

7

### 1. Plaintiffs' Complaint

In Count I of its complaint, Plaintiffs seek confirmation of the $4,000,000 Award pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* D.I. 9, Ex. 2. ¶¶ 36-40. In Count II, Plaintiffs allege that Zeta breached the purchase agreement by refusing to refund Markmidco $33,600 in arbitration fees. D.I. 9, Ex. 2. ¶¶ 41-49. Plaintiffs request that the Court grant them pre-judgment and post-judgment interest and "all fees, costs, and expenses, including attorneys' fees, incurred to enforce the Award and recover damages for Zeta's breach of the Purchase Agreement[.]" D.I. 9, Ex. 2 Prayer for Relief ¶¶ D-F.

### 2. Zeta's Counterclaims

Two of Zeta's counterclaims directly concern the Award. In its sixth counterclaim, Zeta seeks to vacate the Award pursuant to the FAA and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, *reprinted in* 9 U.S.C. § 201 (historical and statutory notes) (hereinafter "Convention") on the grounds that the Award contains "manifest errors." D.I. 9, Ex. 3 Counterclaims ¶¶ 59-63. In its seventh counterclaim Zeta seeks a declaration "that the Award is to be set aside or, in the alternative, that the Award be offset by any and all damages suffered by Zeta from Defendants' breaches of the Purchase Agreement and errors in the Award." D.I. 9, Ex. 3 Counterclaims ¶¶ 64-67.

Zeta's first five counterclaims concern patents and patent applications it acquired as part of the CRM business. Zeta alleges that errors in the inventorship and assignment of the patents and applications "affect[ ] their enforceability and validity." D.I. 9, Ex. 3 ¶ 10. Zeta seeks in its first counterclaim a correction of inventorship pursuant to 35 U.S.C. §§ 152 and 256. In its second counterclaim, Zeta alleges that Markmidco's failure to identify and correct the inventorship and assignment errors breached Markmidco's representation and warranties obligations under the purchase agreement. In its third counterclaim, Zeta seeks indemnification under § 6(b)(ii) of the purchase agreement based on these alleged breaches. In its fourth counterclaim, Zeta alleges that Markmidco's false representations regarding the patents and patent applications constituted fraud. Finally, in its fifth counterclaim, Zeta seeks a declaration that Zeta has the right to withhold certain payments from Markmidco as a result of Markmidco's breach of the purchase agreement.

## II.  THE MOTION FOR CONFIRMATION OF THE AWARD AND FOR FEES, COSTS, AND INTEREST

### A.  Legal Standards

Plaintiffs are foreign companies. Zeta is a Delaware company. It is undisputed—though, for reasons unclear, not acknowledged by Plaintiffs—that the arbitration in question occurred in the United States.

An arbitration award arising under a commercial contract between a domestic party and a foreign party is subject to the Convention. *See Century Indem. Co v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). As a general rule, under the Convention, a district court must confirm an arbitral award unless the court finds that one of seven vacatur grounds specified in the Convention applies to the award. *See Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 307 (3d Cir. 2005). The vacatur grounds specified in the Convention are:

> [1]   The parties to the agreement [giving rise to the arbitration] . . . were under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; . . .
>
> [2]   The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; . . .
>
> [3]   The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; . . .
>
> [4]   The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; . . .

[5]    The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made . . .

[6]    The subject matter of the [dispute] is not capable of settlement by arbitration under the law of [the country where recognition and enforcement is sought]; [and]

[7] The recognition or enforcement of the award would be contrary to the public policy of [the country where recognition and enforcement is sought].

Convention, art. V(1)–(2).

In *Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account,* 618 F.3d 277 (3d Cir. 2010), the Third Circuit created an exception to the general rule that limits vacatur of awards in Convention cases to these seven grounds.  The Court held in *Ario* that when, as in this case, the arbitration in question occurred in the United States, the district court "may apply" the vacatur standards of the domestic FAA. *Id.* at 292.  Under those standards, a district court must confirm an arbitral award except

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of them;

(3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

11

9 U.S.C. § 10(a).

*Ario* does not explain whether its holding that courts "may apply" the FAA vacatur standards when the arbitration occurred in the United States means that district courts should consider the FAA vacatur standards in lieu of the Convention standards or in addition to the Convention standards in such cases. The parties have not briefed this question; from portions of their respective briefs it appears that they assume that both the Convention standards and the FAA standards apply to this case. I need not and will not address the question because the only ground on which Zeta challenges the Award that is specified in either the FAA or the Convention—i.e., that the arbitrator exceeded his powers—is specified in both the FAA and the Convention.

Courts must strictly and narrowly apply the Convention and FAA standards. *See Admart*, 457 F.3d at 308 ("courts have strictly applied the [Convention] defenses and generally view them narrowly"); *see also Ario*, 618 F.3d at 295 (The Domestic FAA provides "[f]our narrow grounds" for vacatur). It is well established "that the court's function in confirming or vacating a commercial arbitration award is severely limited." *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989) (internal quotation marks and citation omitted). And, "[t]here is a strong presumption under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, in favor of enforcing arbitration awards."

12

*Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citation omitted). "[T]he party seeking to overturn an award bears a heavy burden," because courts "accord arbitration decisions exceptional deference." *Dunkley v. Mellon Inv'r Servs.*, 378 F. App'x 169, 171 (3d Cir. 2010).

### B.    Confirmation of The Award

Zeta argues that the Award should not be confirmed because (1) the parties contracted for a "manifest error" standard of review, (2) the Arbitrator exceeded his powers in this arbitration, and (3) the Delaware Uniform Arbitration Act applies to procedural matters in this case. D.I. 14. Zeta also argues that enforcement of the Award is premature. D.I. 14.

### 1.    The "Manifest Error" Standard

Zeta seeks vacatur of the Award based on allegations that the Arbitrator committed "manifest error." Zeta first contends that the manifest error standard applies because the parties contractually agreed to that standard for review of the Award. D.I. 14 at 14–16. But the "only grounds available for setting aside an arbitral award" under the Convention are those "enumerated in Article V[.]" *Ario*, 618 F.3d at 291 (internal quotation marks and citations omitted). And the statutory grounds for vacatur in the FAA are similarly "exclusive" and may not be "supplemented by contract." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576,

578 (2008). Thus, parties cannot contract for more judicial review than the FAA and Convention grant them.

Next, Zeta argues that "manifest error" is equivalent to the judicially recognized doctrine of "manifest disregard of the law," which at least historically "allow[ed] a district court to vacate an arbitration award that evidences manifest disregard of the law rather than an erroneous interpretation." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (quotation marks and citation omitted). The Third Circuit, however, has held that "manifest disregard of the law do[es] not justify setting aside an award" in actions governed by the Convention. *Admart*, 457 F.3d at 308 (citations omitted). And the Supreme Court's holding in *Hall Street Associates* has "thrown into doubt" "[t]he continued validity of manifest disregard as a basis for vacating arbitration awards" governed by the domestic FAA. *Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 256 n. 13 (3d Cir. 2016).

In any event, application of the standard would not help Zeta in this case, as Zeta has not identified any instance of the Arbitrator ignoring applicable law. The only "manifest errors" Zeta alleges the Arbitrator committed were "fail[ing] to consider the timeliness of Markmidco's claims[,] . . . the Arbitrator's erroneous determination on Disputed Issues 1, 2, 3, 5, and 6[,]" and the Arbitrator's "fail[ure] to consider any ancillary claims[.]" D.I. 9, Ex. 3 Counterclaims ¶¶ 27–28. But

Zeta has not alleged—and could not reasonably allege—that these failures or the challenged determination were made in manifest disregard of the law.

### 2. The Arbitrator Did Not Exceed His Powers by Considering Plaintiffs' Submissions

Zeta argues next that the Award should be vacated pursuant to 9 U.S.C. § 10(a)(4) and Article V(1)(c) of the Convention because the Arbitrator exceeded his powers by considering Markmidco's Objection Notice and Supplement.  D.I. 14 at 16–18.  Section § 10(a)(4) of the FAA permits district courts to vacate awards when arbitrators "exceeded their powers."  9 U.S.C. § 10(a)(4).  Article V(1)(c) of the Convention permits district courts to vacate awards that "contain[ ] decisions on matters beyond the scope of the submission to arbitration[.]"  Convention, art. V(1)(c).

A party seeking to vacate an award based on an arbitrator acting beyond her powers "bears a heavy burden."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).  "It is not enough to show that the arbitrator committed an error—or even a serious error."  *Id.* (quotation marks and citation omitted).  A court may only overturn an arbitrator's determination if "the arbitrator acts outside the scope of his contractually delegated authority" by "issuing an award that 'simply reflects his own notions of economic justice' rather than 'drawing its essence from the contract[.]'"  *Id.* (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)).  Thus, "the sole question for [the Court] is

whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.* The standard under the Convention is the same. Under the Convention, vacatur is appropriate when an arbitrator has decided "matters beyond the scope of the submission to arbitration." *SEI Societa Esplosivi Industriali SpA v. L-3 Fuzing & Ordnance Sys., Inc.*, 843 F. Supp. 2d 509, 515 (D. Del. 2012)

In this case, the Arbitrator's findings with respect to the procedural matters associated with Markmidco's Objection Notice and Supplement were reasonable interpretations of the purchase agreement. The Arbitrator analyzed the specific provisions detailed in section 2 of the purchase agreement to determine the procedural appropriateness of Markmidco's Objection Notice, and Supplement. D.I. 9, Ex. 1 at 2–3. Section 2(c)(i), which the Arbitrator quoted in his determination, required Markmidco to "set forth in reasonable detail [its] alternative calculations" "[]to the extent possible based on the information available to Seller[]" in its Objection Notice. D.I. 9, Ex. 1 at 2 (quoting D.I. 9, Ex. 1 § 2(c)(i)).

The Arbitrator found that because Markmidco was only required to provide alternative calculations "to the extent possible based on the information available to Seller[,]" "it [was] [his] determination that although Seller's Objection Notice did not provide alternate calculations, it disputed the entirety of Buyer's First Earn-

16

out Statement pending receipt of additional information from Buyer and is procedurally appropriate." D.I. 9, Ex. 1 at 3. The Arbitrator similarly found that "Seller's Supplement with respect to its filing is procedurally appropriate, as Seller set forth its disputed items and alternative calculations following receipt of information from Buyer, which is prescribed by the Agreement." D.I. 9, Ex. 1 at 3.

Accordingly, the arbitrator was interpreting the contract when he made his decision and did not exceed his powers.

### 3. The Grounds for Vacatur Stated in Delaware Uniform Arbitration Act Do Not Apply

Zeta contends that the Award should not be confirmed because the vacatur standards stated in the Delaware Uniform Arbitration Act (DUAA) apply to the procedural matters in this case. D.I. 14 at 11. Zeta does not explain how the DUAA standards differ in any material respect from the FAA's standards. But in any event, under Third Circuit law, state law vacatur standards apply only when the parties express a "clear intent to apply state law vacatur standards instead of those of the FAA." *Ario*, 618 F.3d at 293 (citation omitted). Here, the purchase agreement does not express a clear intent to apply the Delaware's vacatur standards. Although the purchase agreement's choice of law provision states that the laws of the State of Delaware apply, *see* D.I. 9, Ex. 5 at § 7(d), this broad choice of law provision does not demonstrate that the parties clearly intended to opt out of the FAA scheme. Moreover, Zeta removed this action from the Court of

Chancery to this Court on the basis that the Award is governed by the Convention and the FAA. *See* D.I. 1 ¶¶ 1, 4, 7, 9-13. Accordingly, the grounds for vacatur set forth in the DUAA do not apply in this case.

### 4.   Enforcement of the Award is Not Premature

Zeta contends that enforcement of the Award is premature because entering judgment on the Award before determining the parties' rights on related issues and related cases would undermine the orderly resolution of these matters. D.I. 14 at 12. Zeta asks that I either deny Plaintiffs' motion without prejudice or stay this action "until all the counterclaims, offsets, and indemnity claims" in this case and a related case "have been finally decided such that a final, complete award between the Parties can be rendered."[2] D.I. 14 at 11–14.

Enforcement of the Award at this time, however, is appropriate for two reasons. First, Zeta's "counterclaims, offsets, and indemnity claims" do not overlap with the issues submitted by the parties for arbitration. A stay can be appropriate when issues implicated by an arbitration award are also implicated in other proceedings. *See Admart*, 457 F.3d at 306. In such cases, a stay helps avoid inconsistent resolutions of the issues. But when the other issues are "not within the ambit of [a plaintiff's] suit to confirm the Award" a stay should not be granted. *Id.*

---

[2] The related case is *MarkDutchCo 1 B.V.* v. *Zeta Interactive Corp.*, C.A. No. 1:17-cv-01641-CFC (D. Del.).

Second, denying the motion without prejudice or staying this case would transform a summary proceeding into a protracted dispute. A basic purpose of arbitration is "to dispose of disputes quickly and avoid the expense and delay of extended court proceedings." *Id.* at 311 (internal quotation marks and citations omitted). That is why judges in this district have not allowed defendants to assert unrelated counterclaims when doing so would delay arbitration confirmation proceedings. *See, e.g., China Three Gorges Project Corp. v. Rotec Indus., Inc.*, 2005 WL 1813025, at *3 (D. Del. Aug. 2, 2005) (rejecting the defendant's attempt to use potential "setoff" claims as a reason not to confirm an arbitration award).

## C.    Fees, Costs, and Interest

Plaintiffs argue that they are entitled to attorneys' fees, costs, and prejudgment interest. D.I. 8 at 18–20. Plaintiffs also seek reimbursement of $33,600 in arbitration fees pursuant to section 2(c)(i)(D) of the purchase agreement. D.I. 8 at 18–20. I find that awarding Plaintiffs attorneys' fees and prejudgment interest is appropriate, but I will deny Plaintiffs' request for costs and reimbursement for a share of its arbitration fees.

### 1.    Attorneys' Fees

Third Circuit law provides that attorneys' fees are generally awarded if the party opposing confirmation of an arbitration award acted without justification or did not have a "reasonable chance to prevail." *Chauffeurs, Teamsters and Helpers,*

*Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir. 1980) (quotation marks and citations omitted); *see also Wilkes Barre Hosp. Co., LLC v. Wyo. Valley Nurses Ass'n Pasnap*, 453 F. App'x 258, 261 (3d Cir. 2011) (quoting *Chauffeurs* for this proposition).

As Zeta acknowledges in its briefing, district courts have an extremely limited scope of review of commercial arbitration awards under the Convention and FAA. *See* D.I. 14 at 10. The Arbitrator's findings and interpretation of the relevant provisions of the purchase agreement were within the scope of his authority and no other ground for vacatur even arguably applied to this case. I think it very clear that Zeta acted without a "reasonable chance" of vacating the Award. *Chauffeurs*, 625 F.2d at 1094. Therefore, I will grant Plaintiffs' request for fees.

### 2. Prejudgment Interest

In deciding whether to award prejudgment interest, courts consider: "(1) whether the claimant has been less than diligent in prosecuting the action; (2) whether the defendant has been unjustly enriched; (3) whether an award would be compensatory; and (4) whether countervailing equitable considerations militate against a surcharge." *Calbex Mineral Ltd. v. ACC Res. Co., L.P.*, 90 F. Supp. 3d 442, 467 (W.D. Pa. 2015) (quoting *Feather v. United Mine Workers of Am.*, 711 F.2d 530, 540 (3d Cir. 1983)).

First, Plaintiffs have been diligent in pursuing these claims. On December 29, 2016, Zeta submitted to Markmidco the First Earn-out Statement. Twelve days later, on January 10, 2017, Markmidco sent Zeta a letter requesting additional information related to Zeta's First Earn-out Statement. On January 13, 2017, two days after Zeta responded to the request for additional information, Markmidco sent Zeta an Objection Notice. On January 30, 2017 Markmidco's counsel sent Zeta a "Supplement" to its Objection Notice and notified Zeta that it was referring the parties' dispute to the Arbitrator. The Arbitrator issued a decision in Markmidco's favor on August 4, 2017. And, when Zeta refused to pay Markmidco the Award, Plaintiffs filed this lawsuit on September 6, 2017.

Second, the essence of lawsuit is that Zeta has been unjustly enriched by failing to pay Markmidco the money owed. *See Feather v. United Mine Workers of Am.*, 711 F.2d 530, 540 (3d Cir. 1983) ("'To the extent defendant has had the free use of the income-producing ability of plaintiffs' money without having to pay for it, he has been unjustly enriched.'") (quoting Restatement (Second) of Contracts § 370 cmt. a (Am. Law. Inst. 1981) and adopting its definition of unjust enrichment).

Third, just awarding Plaintiffs the $4,000,000 First Earn-out Payment Amount would not make Plaintiffs whole. Zeta has owed Plaintiffs $4,000,000 since the Arbitrator made his decision in August 2017. Plaintiffs have not had

access to those funds for two years and lost their bargained-for right to prompt payment of the First Earn-out Payment Amount. Interest will compensate Plaintiffs for those losses. *Cf. Al Haddad Bros. Enters., Inc. v. M/S Agapi*, 635 F. Supp. 205, 210 (D. Del. 1986), *aff'd*, 813 F.2d 396 (3d Cir. 1987) (awarding a plaintiff interest to "make it whole for the wrongful deprivation of its money" for three years following an arbitration award).

Fourth, there are no countervailing equitable considerations.

Accordingly, I will award Plaintiffs prejudgment interest.

### 3.    Costs

Plaintiff have cited no authority to support their request for costs. Accordingly, I will deny the request.

### 4.    Arbitration Fees

Finally, Plaintiffs request in their motion that I order Zeta to reimburse Plaintiffs for $33,600 in arbitration fees. Those fees, however, were not part of the Award. Indeed, the arbitrator rejected Plaintiffs' attempt to make the allocation of arbitration fees part of the Award. Accordingly, I will deny Plaintiffs' motion insofar as it seeks reimbursement of arbitration fees. The allocation of the arbitration fees is the subject of Plaintiffs' breach of contract claim and will be resolved with the adjudication of that claim.

## III. THE MOTION TO DISMISS COUNTERCLAIMS, OR ALTERNATIVELY, TO SEVER

### A.    Legal Standards

To state a claim upon which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(A)(2). Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

In actions for fraud, a complaint must also satisfy Rule 9(b)'s the heightened pleading standards. *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Rule 9(b) requires a complainant alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must state the circumstances of the alleged fraud with enough particularity "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of

immoral and fraudulent behavior." *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004) *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quotations marks and citation omitted). "Complaints that fail to plead fraud or false claims grounded in fraud with the requisite particularity are dismissed in the same manner as a dismissal under [R]ule 12(b)(6)." *Ninespot, Inc. v. Jupai Holdings Ltd.*, 2018 WL 3626325, at *3 (D. Del. July 30, 2018).

## B.    Defendant's Counterclaims

### 1.    Counterclaim One: Correction of Inventorship

In its first counterclaim, Zeta alleges that Defendants' failure to name all the true inventors on the patents and patent applications transferred to Zeta pursuant to the purchase agreement and Defendants' failure to obtain assignments from those inventors were "error[s] which damage[d]" Zeta and "can be corrected by the federal district court pursuant to 35 U.S.C. § 256 … [and] 35 U.S.C. § 152." D.I. 9, Ex. 3 Counterclaims ¶¶ 31-32.  Zeta further alleges that "[a]s a result" of these failures, Zeta "has been injured in an amount to be ascertained at trial." D.I. 9, Ex. 3 Counterclaims ¶ 34.

Zeta argues in its briefing that its "first Counterclaim … is controlled by 35 U.S.C. § 256." D.I. 13 at 7.  Section 256 permits a district court to "order correction of [a] patent on notice and hearing of all parties concerned[.]" 35 U.S.C. § 256(b).  It does not, however, create a cause of action for damages.  Zeta

24

argues in its briefing that "this Counterclaim does not seek money damages." D.I. 13 at 7. But that contention is belied by the express language of the counterclaim, which, as just noted, alleges Zeta suffered "damages" and seeks a monetary award "to be ascertained at trial." Because Zeta's first counterclaim is a claim for damages made pursuant to § 256, it fails as a matter of law.

### 2. Counterclaims 2 and 3: Breach of Contract and Indemnification

Zeta's second counterclaim alleges that Markmidco breached the purchase agreement by (1) failing to transfer valid patents to Zeta as required by the agreement, (2) falsely representing that the patents identified on Schedule 3(a)(ii)(N)(1) of the purchase agreement were valid and enforceable, and (3) falsely representing that it had taken all reasonably necessary or appropriate steps to secure the assignment of all rights in certain intellectual property defined in the purchase agreement. D.I. 9, Ex. 3 Counterclaims ¶¶ 37-39. Zeta's third counterclaim seeks indemnification for Plaintiffs' contractual breaches. D.I. 9, Ex. 3 Counterclaims ¶¶ 41-47.

Plaintiffs argue that Zeta's contractual counterclaims are time-barred. Zeta concedes that, under the express terms of the purchase agreement, the representations and warranties upon which Zeta bases its contract claims expired five months before Zeta filed its counterclaims. D.I. 13 at 13. It counters, however, that under the purchase agreement "claims involving fraud ... shall

25

survive indefinitely[,]" D.I. 13 at 13, and it intimates that the 18-month limitations period prescribed by the purchase agreement is unreasonable and thus invalid under Delaware law, *see* D.I. 13 at 14.

Zeta is correct that the purchase agreement does not set a limitations period for fraud claims, and for that reason, I agree that its fourth counterclaim is not time-barred. But its second and third counterclaims are contract claims, not fraud claims; indeed, Zeta itself makes clear in its briefing that its contract claims are distinct from its fraud claim, *see* D.I. 13 at 13. Accordingly, Zeta's second and third counterclaims do not fit within the fraud exception to the purchase agreement's time bar.

Zeta is also correct that under Delaware law, "parties may contractually agree to a period of limitations shorter than that provided for by statute, so long as this shortened period is reasonable." *Eni Holdings, LLC v. KBR Grp. Holdings, LLC*, 2013 WL 6186326, at *7 (Del. Ch. Nov. 27, 2013).[3] But the 18-month limitations period here *is* reasonable. The Delaware Supreme Court has held that "it is settled Delaware law" that a "one year limitation on suit on an insurance contract is reasonable and binding[.]" *Closser v. Penn Mut. Fire Ins. Co.*, 457 A.2d 1081, 1083 (Del. 1983). And this court has declined to find a contractual,

---

[3] The parties agreed to a choice-of-law provision in the purchase agreement. The provision states that the laws of the State of Delaware apply to disputes related to the agreement. *See* D.I. 9, Ex. 5 at § 7(d).

six-month limitation on suit for Title VII claims unreasonable under Delaware law. *See Johnson v. DaimlerChrysler Corp.*, 2003 WL 1089394, at *4 (D. Del. Mar. 6, 2003). Accordingly, the purchase agreement's more generous eighteen-month limitation—which these sophisticated and well-represented parties agreed to—is not unreasonable, and it therefore bars Zeta's second and third counterclaims.

### 3. Counterclaim 4: Fraud

Zeta's fourth counterclaim alleges that Markmidco committed fraud in selling the CRM business to Zeta. *See* D.I. 9, Ex. 3 Counterclaims ¶¶ 48-54. Under Delaware law, the elements of fraud are:

> 1) a false representation, usually one of fact, made by the defendant;
> 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;
> 3) an intent to induce the plaintiff to act or to refrain from acting;
> 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and
> 5) damage to the plaintiff as a result of such reliance.

*Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).

I agree with Plaintiffs that Zeta's fraud counterclaim should be dismissed because Zeta has failed to plead all five elements of a fraud claim. As just one example, although Rule 9(b) provides that knowledge may be alleged generally, Zeta does not allege in its counterclaims that Plaintiffs had knowledge or belief that their representations regarding the validity of the transferred patent assets were

false or that Plaintiffs made such representations with a reckless indifference to the truth. Accordingly, I will grant Plaintiffs' motion to dismiss Zeta's fourth counterclaim.

### 4. Counterclaim 5: Declaratory Relief

Zeta's fifth counterclaim requests a declaration that "as a result of Markmidco's wrongful conduct, Zeta is not required to release the remaining amount held back under the Purchase Agreement." D.I. 9, Ex. 3 Counterclaims ¶ 58. Zeta alleges that "[a]n actual controversy of a justiciable nature currently exists between and among the Parties *concerning whether Zeta has the right to withhold such amounts as an offset to the damages caused by Markmidco's breach and fraud as described herein.*" D.I. 9, Ex. 3 Counterclaims ¶ 57 (emphasis added). Thus, an actual controversy exists only insofar as Zeta has asserted the contract and fraud claims in its counterclaims. Since I am granting Plaintiffs' motion to dismiss those claims, it follows that no actual controversy exists. Accordingly, the Court lacks subject matter jurisdiction over Zeta's fifth counterclaim and it is therefore dismissed. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003) ("[C]ourts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt[]" and can "raise *sua sponte* subject-matter jurisdiction concerns.").

### 5. Counterclaims 6 and 7: Vacatur Or Correction of The Award and Declaratory Relief

Zeta's sixth counterclaim seeks to vacate the Award and its seventh counterclaim seeks a declaration that the Award is to be set aside. D.I. 9, Ex. 3 Counterclaims ¶¶ 59-67. I have already decided, however, that Plaintiffs' motion to confirm the Award should be granted because no cognizable grounds for vacatur exist. Accordingly, Zeta's sixth and seventh counterclaims are rendered moot and must be dismissed. *See Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 71–72 (2013).

## IV. CONCLUSION

For the reasons discussed above, I will grant in part and deny in part Plaintiffs' motion for confirmation and for fees, costs, and interest. I will also grant Plaintiffs' motion to dismiss Defendant's counterclaims.

The Court will issue an order consistent with this Memorandum Opinion.